11 JOAN BERNARD ARMSTRONG, Chief Judge.
This is a workers’ compensation case. On October 2, 1998, the plaintiff, Albert Clark, broke his right wrist when he fell from a ladder, while painting Fortier High School. This is not contested. He filed a workers’ compensation claim, designating the New Horizon Building Group, Inc. (“New Horizon”) and the Orleans Parish School Board (“the School Board”) as his alleged employers. No party to this litigation has admitted to being Clark’s employer.
On August 26, 1999, Clark amended his claim naming as additional defendants Simms Enterprises of Louisiana[1] (“SEI”) and Environmental Abatement Services, Inc. (“EASI”), the companies the School Board hired in a joint venture pursuant to a written contract to perform painting jobs at Fortier High School and Allen Elementary School. The School Board filed a combined third party claim and cross-claim. The School Board’s third party claim was against EASI, alleging that Clark was employed by New Horizon as a subcontractor for a joint venture between SEI and EASI, which joint venture had contracted with the Board to do painting at Fortier High School. The School Board also named the Louisiana Worker’s Compensation Corporation, EASI’s compensation insurer, as an additional defendant, alleging that the School Board was named as an additional insured under the policy. The School Board’s cross-claim was against New Horizon alleging that it was the subcontractor in a joint venture between EASI and SEI and the direct employer of Clark.
The trial was held on May 18, 2001. The trial court rendered judgment on January 30, 2002, finding that the defendant was temporarily totally disabled and that New Horizon and EASI were each liable for one half of the workers’ compensation benefits due to the claimant for the job related injury he suffered in the course and scope of his employment, because New Horizon and EASI had an employer-employee relationship and had interrelated business methods and operations. The court awarded payments based on an average weekly wage of $360.00 and continued *306 medical treatment. The court found that EASI’s and New Horizon’s failure to pay-benefits to Clark was without reasonable cause. The court condemned them to pay penalties of $2000 or 12% of back due indemnity payments whichever is greater and $2000 or 12% of outstanding medical benefits due whichever is greater. In addition, the court awarded the claimant $19,175.39 in attorneys’ fees and $1000 for trial, because of New Horizon and EASI’s arbitrary and capricious refusal and failure to pay workers’ compensation benefits when due and medical benefits accrued as a result of the claimant’s injury. The court also ordered New Horizon and EASI to pay the School Board one-half the costs of the proceedings, including $6200 in attorneys’ fees and expenses, and a $75 expert witness fee to physical therapist Ms. Underwood.
EASI and its insurer, Louisiana Workers’ Compensation Corporation appealed jointly. New Horizon also appealed. SEI was not cast in judgment and is not a party to this appeal.
No party disputes the lower court finding that Clark was temporarily totally disabled or that his injury was work related. No party to this appeal suggests that Clark was employed by the School Board.
Clark went to Charity Hospital when he was injured. On direct examination he testified that he filled out an admission sheet listing New Horizon as his employer. However, on cross-examination he admitted that on his first two visits to Charity on October 2 and October 5, 1998, he left the section for designating the employer blank and it was not until his third visit on October 9, 1998, that he first listed New Horizon as his employer.
He testified that he was paid $15/hr. and worked ten to twelve hours a day six or seven days per week.
On direct examination he was asked:
Q. And how did you come to be employed by New Horizon?
A. A friend of mine by the name of Jessie.
Q. And did you go somewhere to meet the officials of the company?
A. I went on Canal and Broad Street.
Q. And did you meet anyone there, a particular person there when you went there?
A. I met Charlotte.
Clark testified that he worked several months for New Horizon, but he only received one paycheck during that time and it was for no more than $400.00 or $500.00 in spite of the long hours he allegedly worked. He described the check as being, “On New Horizon stationery.” Clark could produce no documentary evidence that he had been paid even once.
On cross-examination he stated that he could not remember the last name of the man, Jesse, who had introduced him to Horizon. He testified that Jesse was a painter and that he knew him well. He had met him “right down the street from | New Horizon where the place is located.” He testified that he “thought” that he filled out an employment application when he went to New Horizon’s office.
Clark then testified that Jesse introduced him to Charlotte Simon.[2] Clark was asked:
Q. Did Ms. Simon hire you? Did she say I want you to work for New Horizon?
A. To my knowledge she did.
Q. What words did she use to hire you?
*307 A. Again, as I told you, I recall filling out the application. They hired me. Jessie told me that they hired me, and we went to work.
Q. Jessie told you you were hired?
A. He called me and let me know that I was hired.
Q. Did Ms. Simon tell you you were hired?
A. He brought me back. After he picked me up, we went over there. If I recall, I was told by Ms. Charlotte that I was hired.
Q. But specifically, I mean, you kind of — you keep lumping her. I want to know specifically did Ms. Simon address you and tell you you were hired?
A. As best as I can remember, I was told that I was hired.
Q. And who was the person who told you you were hired?
A. To my knowledge it was Jesse, Ms. Simon, and Ronald.
Later, he testified specifically that Ms. Simon told him that he was hired, but could not recall what day it was. He could not recall whether he did work for New Horizon at Allen Elementary - School as well as Fortier. He could not recall who signed his paycheck. Before he went to work for New Horizon he was doing some house leveling, but he could not recall the name of his employer. He explained that he did a variety of jobs.
When cross-examined by EASI’s attorney, he stated that he went to New Horizon’s offices at Canal and Broad four, or five times when,, for example, he needed to get paint. On those occasions he saw Ms. Simon, who worked for New Horizon and appeared to be in charge. He also understood that Ronald was an employee of New Horizon and Jesse told him that he, Jesse, was a New Horizon employee. He never got a check from either the School Board or EASI. He never filled out an employment application with the School Board and was never supplied any work materials by the School Board.
Clark further testified that:
I’ve known Jesse maybe about two or three years. I met Jesse working for Reverend Alexander’s place. They had a place right down the street. This was in '93. They used to feed the homeless over there. If you were looking for work, all you had to was go over there to the church.
Sheletta Warner, a paralegal/office manager in the law office of Danatus King, Clark’s attorney, testified for the sole purpose of identifying correspondence from that office to New Horizon on October 8, 1998 and a letter dated October 14, 1998 on New Horizon stationery from Charlotte Simon addressed to Danatus King and Associates Law Offices showing that amicable demand had been made on New Horizon for back pay and medical benefits and that New Horizon had responded with a denial of the existence of an employment relationship with Clark.
Robert Blunt, the Assistant Director of Maintenance for the School Board, testified that at the time that Clark was injured he was the Area Coordinator in the School Board’s maintenance department, which included responsibility to solicit proposals for projects. He did not do any direct supervision of contractors. He identified the contract between the School Board, EASI and SEI.
He further testified that:
Initially, we were having problems with the progress of the work and calling and talking, I guess, the first contact with someone was Ronald Jones. I think he was with a different company than *308 the one we were contracting with. [Emphasis added.]
Blunt testified that working under him was a Mr. Dennis Gay who had the job of checking on the project and filling out reports on its progress. Gay’s contract status reports listed New Horizon as the contractor on the painting project.
Blunt testified that in response to his attempt to put the joint venture in default because of slow progress on the job, he received a fax from Ronald Jones asking for an extension of time that came on letterhead styled, “New Horizon Building Group Incorporated.” The fax stated that:
[A]t the present time we’ve hired five painters to complete the painting for Fortier and Allen. Although we’re in default, we appreciate your patience and ask that you extend the deadline to our contract to October 10th ...
Blunt explained that when he asked how New Horizon happened to be on the job he was told that New Horizon was a subcontractor to the joint venture. On cross-examination Blunt testified that he recalled having once signed off on an invoice for New Horizon rather than directly for the joint venture. However, after the conclusion of the trial, the record was supplemented with a copy of the invoice showing that it was in the name of Sims Enterprises International, not New Horizon.
Blunt testified that he did not know how many hours a day or how many days a week the painters were at the school, but he did recall that:
There were a couple of times where they made arrangements to work Saturday ... That was part of the problem they weren’t there a lot of days.
Charlotte Simon, the president of New Horizon at the time of Clark’s accident, testified that New Horizon’s laborers on the St. Bernard and B.W. Cooper housing projects were paid $8 per hour and the site supervisors were paid $10 per hour. She testified that she had no contracts with the School Board and never hired Clark to work for New Horizon. She testified that the first time she ever saw Clark was that day in court. Clark was never on her payroll records. She testified that New Horizon never received any payment or other remuneration for any work performed at a School Board work site.
Simon testified that when she was out of the office for two weeks around October 19, 1998, two file cabinets with company checks disappeared. She testified that she filed a police report. She further testified that Ronald Jones worked for Carol Warner and that he had never worked for New Horizon. New Horizon had had a joint venture agreement with Carol Warner’s company to work on the St. Bernard and B.W. Cooper housing projects. Simon and Warner both operated their companies from 2714 Canal Street, Suite 30. New Horizon, Simon’s company provided a joint bank account for both New Horizon and Warner’s company, MJ Environmental. She testified that Warner was also a vice-president of SEI, but that SEI operated out of another location.
She testified that had Clark been her employee his name would have shown up on her payroll records, but on cross-examination it appeared that Eleanor LaFrance, who she testified was not her employee, showed up on her payroll records while Gail Joseph did not. This, in spite of evidence that Ms. Joseph signed for certified mail on behalf of New Horizon at a time when Simon testified she was not employed by New Horizon. Simon was unable to produce any company payroll records for the time when Clark was injured. On further cross-examination, she explained that she was with New Horizon Building Group, Carol Warner was with *309 SEI and MJ Environmental and Eleanor LaFrance and Ronald Jones worked for MJ Environmental. Only New Horizon’s name appeared on the checks that New Horizon and MJ Environmental used jointly-
Simon testified that after she responded to Clark’s attorney that Clark was not her employee she inquired no further. She testified that she was unaware that Ronald Jones was corresponding with the School Board using a New Horizon letterhead, but that he did have access to New Horizon stationery.
Simon testified that she never had any business agreement with EASI and that the payments of $2,000.00 per month to EASI from New Horizon were unauthorized checks signed by Eleanor LaFrance. Simon testified that the New Horizon Bank One account was closed on November 3, 1998, but the check register reflects that checks continued to be issued on that account all the way through February of 1999. She could not explain this anomaly.
She admitted that if Clark had been paid by MJ Environmental, the check would have borne only the name of New Horizon. She also acknowledged that had Clark received such a check he would have assumed that he was employed by New Horizon.
Simon then testified that Eleanor LaF-rance formed a company called New Horizon Construction separate and distinct from Simon’s company, New Horizon Building Group. However, both companies operated out of the same office. She identified certain New Horizon Building Group cheeks bearing the address of 1551 Wickfield, the address of SEI.
She testified that someone had been forging her name to checks without her knowledge all the way back to December of 1997.
 This is really a fact based case. There are no material legal issues in dispute. In reviewing the findings of fact in a workers’ compensation case, the manifest error/clearly wrong standard is employed. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94), 630 So.2d 706, 710. There is a rebuttable presumption of employee status in favor of “any person rendering service for another in any trade, business or occupation covered under the Workers’ Compensation Act.” La. R.S, 23:1044. However, the real issue in this case is not whether Clark rendered service, but to whom he rendered it. While one could say that by doing work on Fortier High School Clark was “rendering service” to the School Board pursuant to La. R.S. 23:1044, as stated earlier in this opinion, no party to this appeal contends that Clark was an employee of the School Board. Therefore, the statutory presumption of employment has no relevance to the instant case.
I. EASTS ASSIGNMENTS OF ERROR
EASI complains that the trial court erred in concluding that an employment relationship existed between Clark and EASI. We agree. No one testified that EASI was Clark’s employer. Clark testified that New Horizon was his employer. The trial court held EASI liable based on a finding that “NEW HORIZON and EASI were interrelated in their business methods and operations” but there is no evidence in the record to support that finding. There was a great deal of evidence to support such a finding as between MJ Environmental and New Horizon, but there is no evidence in the record that there is any relationship between MJ Environmental and Environmental Abatement Services, Inc., and no one contends that any such relationship existed. The testimony concerning New Horizon’s *310 | incorporate relationships is so Byzantine that it would be understandable had the trial court confused Environmental Abatement Services, Inc. with MJ Environmental.
In any event, there is no basis in the record to support the court’s finding that New Horizon and EASI had interrelated “methods and operations.” Consequently, there is nothing in the record to support the trial court’s finding that the EASI was Clark’s employer. Clark’s brief contains only one brief reference to the issue of who his employer was at the time he was injured:
Based on the evidence presented at trial, the trial court was correct in ruling that New Horizon and Environmental Abatement Services, Inc. were Clark’s employers.
The record does not support this statement as to EASI and argument of counsel, no matter how artful is not evidence.
The same is true regarding the only reference in the School Board’s brief directed to this issue:
In conclusion, the trial court was correct in ruling that New Horizon and Environmental Abatement Services, Inc. were the employers of the claimant.
New Horizon argues that no relationship existed between itself and EASI.
Thus no party can cite to anything in the record to support the lower court’s conclusion concerning the interrelatedness of EASI and New Horizon, nor does any party cite to anything in the record indicative of an employment relationship between EASI and Clark. Accordingly, EASI is not liable to Clark for any workers’ compensation benefits or penalties or attorneys’ fees.
EASI also assigns as error the lower court’s finding that a joint venture existed between EASI and New Horizon. We find nothing in the judgment of the trial court making such a finding. This assignment of error is irrelevant.
|nEASI in its third and final assignment of error complains that it was error for the trial court to condemn it to pay attorneys fees’ to the School Board. We agree. As we have found that EASI did not employ Clark and that no joint venture or interrelatedness existed between it and New Horizon, there is no basis in law to support the decision to condemn EASI to pay attorneys’ fees to the School Board.
II. NEW HORIZON’S ASSIGNMENTS OF ERROR.
New Horizon in its first and pivotal assignment of error complains that the trial court erred in finding that an employment relationship existed between itself and Clark. New Horizon attacks the credibility of Clark’s testimony. However, the minor discrepancies it notes between Clark’s deposition testimony are either insignificant or immaterial or both. The differences are such as might be expected from someone who has not memorized his testimony. Clark’s fuzzy memory concerning some of his other employment relationships can be explained by the itinerant nature of his employment. For example, he explained in court that when he testified in his deposition that he was employed by New Horizon for several months he meant that it was for a portion of several months, perhaps the last week of one month, all of the next, and perhaps the first week or so of the next. In this case that most likely meant the end of August, all of September, ending on October 2, 1998, when he had his accident.
Moreover, the fact that he could not remember who signed his paycheck is not significant. It is not as though he received countless paychecks over a period of time *311 with the same signature on them. The fact that he had no proof he had actually received a paycheck from New Horizon proves nothing. A reasonable fact finder could easily conclude that he simply cashed his check, in which case it is unlikely that he would have retained any proof of having received it.
Based on this analysis and the summation of Clark’s testimony set forth near the beginning of this opinion, we find no basis for disagreeing with the lower court’s implicit decision to credit Clark’s testimony. While reasonable fact finders could surely differ concerning whether he might have embellished his testimony about how many days per week and how many hours a day he worked for New Horizon, considering the record in this matter, it seems virtually impossible that he could have invented the employment relationship with New Horizon to which he testified.
Additionally, we see no reason to doubt Mr. Blunt’s testimony that Mr. Gay’s contract status reports listed New Horizon as the contractor on the project. As noted above in summarization of Blunt’s testimony, Blunt also corroborated the involvement of New Horizon in the painting project by testifying that he received a fax from Ronald Jones on New Horizon letterhead concerning the project.
Regardless of whether this Court employs the manifest error/clearly wrong standard of review or a de novo standard of review, we find no error in the lower court’s finding that New Horizon was Clark’s employer for all purposes relevant to this litigation.
Furthermore, once the Workers’ Compensation Judge made the credibility call in favor of Mr. Clark and against Ms. Simon on the question of Clark’s employment, it then becomes impossible for New Horizon to have denied his claim for compensation benefits in good faith, New Horizon’s denial having been based on its denial of the existence of an employment relationship with Clark rather than on a denial of the work related nature of the injury or the extent of his disability. |13 Therefore, we find no error in the trial court’s decision to condemn New Horizon to pay penalties and attorneys’ fees. As we have previously found that EASI does not share in this liability, New Horizon must bear the entire burden.
However, that portion of the judgment condemning New Horizon to pay attorneys’ fees to the School Board is in error. There is no statutory or contractual basis for the award. That portion of the judgment must be reversed.
New Horizon also assigns as error the finding by the trial court that the defendant had an average weekly wage of $360.00. The defendant argues that, “giving Clark benefit of every conceivable presumption [italics original], he would have earned $8.00 per hour at 40 hours per week, resulting in an average weekly wage of $320.00.” This statement in New Horizon’s brief is not supported by the record. Clark testified that his rate of pay and hours worked were much greater that what New Horizon’s brief contends is the maximum supported by the record. Moreover, Mr. Blunt testified that work was done on the weekend, which a reasonable fact finder could find corroborated Clark’s testimony, at least to some extent. We find that the lower court’s decision to base the award on an average weekly wage of $360.00 was at the very low end of what the record would support. We find no error in the lower court judgment in this regard.
For the foregoing reasons, we reverse the portion of the lower court judgment against EASI; we reverse that portion of the lower court judgment awarding attor *312 neys’ fees to the Orleans Parish School Board; those portions of the judgment holding EASI and New Horizon liable for one-half each of the awards benefits, penalties and attorneys’ fees awarded to Clark are hereby amended to hold New Horizon solely responsible; all other portions of the judgment are affirmed.
REVERSED IN PART; AFFIRMED IN PART; AMENDED IN PART; AND RENDERED.

. Actually, the full proper name of this party appears to be Sims Enterprises International, Inc. of Louisiana.

. While Ms. Simon is referred to as "Charlotte” consistently throughout the record, she testified that she actually spelled her name, "Charolette.”